2008 OK 5

**Linda GENS, an individual, personally and as next friend of Thomas Gens, a minor, Plaintiff/Appellant,**

v.

**CASADY SCHOOL, an Oklahoma Not–For–Profit Corporation, Defendant/Appellee.**

No. 104601.

Supreme Court of Oklahoma.

Jan. 29, 2008.

Wilbur C. Hall, Jr., Norman, OK, for plaintiff/appellant.

Jeremy Tubb, Daniel Johnson, Crowe & Dunlevy, Oklahoma City, OK, for defendant/appellee.

WATT, J.

¶ 1 The sole issue presented on certiorari is whether Gens, proceeding in her own right and as next friend of her child, pled adequate facts to avoid dismissal. Under the facts presented, we hold that Gens made arguments sufficient to avoid a summary dismissal for failure to state a claim for which relief may be granted [1] on the theories of breach of contract, invasion of privacy and withholding of psychological records.

## ALLEGED FACTS

¶ 2 For a period of almost eighteen years, from September 1982 until October 13, 2000, Gens' husband served on the faculty at Casady. After the husband was diagnosed with cancer, the Genses were promised orally by

---

1. Title 12 O.S. Supp.2004 § 2012 providing in pertinent part:

"... B. HOW PRESENTED. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

... 6. Failure to state a claim upon which relief can be granted...."

two Casady headmasters that their children would be allowed to attend the school with continued tuition support for as along as they wanted. The husband taught until the last days of his life.

¶ 3 Gens' son was in the Casady system from pre-kindergarten until the ninth grade. Casady honored their agreement with the Genses from October of 2000 until January of 2004. However, on January 8 and January 13, 2004, respectively, the child was suspended. Gens was informed that her son would be expelled on January 28, 2004, unless Gens voluntarily withdrew him from classes. Although Gens believes that the decision to remove her son from the Casady system was made in violation of the school's disciplinary procedures,[2] Gens withdrew him "under protest" rather than allow his records to indicate that he had been expelled. The removal of her son from Casady required special schooling alternatives costing Gens in excess of $100,000.00.

¶ 4 Following the involuntary withdrawal of her son, Gens requested all the child's school and psychological records. To date, it is undisputed that Casady has not provided complete copies of the psychological records and results of the psychological tests performed on the child.[3]

¶ 5 Gens sued Casady alleging: conversion of her son's and husband's records and for replevin of the same; injunctive and declaratory relief; bad faith breach of contract; and invasion of privacy. After affording Gens the opportunity to amend her petition, the trial court granted Casady's motion to dismiss for failure to state a claim upon which relief may be granted. The Court of Civil Appeals affirmed on grounds that: Gens had no property interest in records maintained by Casady; no enforceable contract existed to allow the child to continue in the Casady system; and because the child's privacy rights were personal, Gens could not maintain a claim on his behalf. Today, with the promulgation of this opinion, we grant certiorari.

¶ 6 **UNDER THE FACTS AND THE LAW, THE PLAINTIFF'S SECOND AMENDED PETITION IS SUFFICIENT TO WITHSTAND A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

■ ¶ 7 Gens' certiorari petition does not require this Court to determine the merits of the cause. Rather, it necessitates review of the trial court's grant of the motion to dismiss for failure to state a claim upon which relief may be granted.

■ ¶ 8 Generally, motions to dismiss are viewed with disfavor.[4] This court re-

2. A document attached to Gens' Second Amended Petition, filed on October 3, 2006, and represented as being a portion of the Casady Handbook providing in pertinent part:

> "... **HONOR AND DISCIPLINE COMMITTEE**
> The Student Faculty Honor and Discipline Committee has been established to discuss and recommend to the headmaster appropriate punishment for an individual who has admitted being involved in lying, cheating (plagiarism), stealing, vandalism, physical or mental harassment, the use or possession of alcohol or illegal drugs on campus or at a school-sponsored function or other major or repeated minor disciplinary infractions....
> The purpose of the Honor and Discipline Committee is to give the student body, faculty, and administration a sense of shared responsibility in the maintenance of honor and acceptable behavior; to give students a greater understanding of issues involved in discipline; to give a 'student voice' in major disciplinary

issues; and to encourage honor and leadership among the students...."

3. In the state school system, parents are given access to their student's screening results and must give written permission for individual evaluations which are not routinely given. See, 70 O.S.2001 § 1210.277 providing in pertinent part:

> "The results of individual student screening shall be confidential, except that information and results shall on request be made available to parents either visually or in written form and to professional personnel involved in the education of the students, as determined by the Board. Provided, however, students shall not be subjected to individual evaluation without prior written parental permission except for re-evaluations required pursuant to the IDEA...."

4. *May, M.D. v. Mid–Century Ins. Co.,* 2006 OK 100, ¶ 10, 151 P.3d 132; *Lockhart v. Loosen,* 1997 OK 103, ¶ 4, 943 P.2d 1074; *Washington v.*

views the dismissal *de novo* considering the legal sufficiency of the petition and taking all allegations in the plaintiff's petition as true.[5] The function of a motion to dismiss is to test the law of the claims, not the facts supporting them.[6] **No dismissal for failure to state a claim upon which relief may be granted should be allowed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle relief.**[7] Plaintiffs need neither identify a specific theory of recovery nor set out the correct remedy or relief to which they may be entitled.[8] **If any set of facts can be established which is consistent with the allegations, a motion to dismiss should be denied.**[9] Dismissal is appropriate only for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable theory.[10] Where not all claims appear to be frivolous on their face or without merit, dismissals for failure to state a claim upon which relief may be granted are premature.[11] The movant bears the substantial burden of demonstrating any insufficiency.[12] Only under these standards may we uphold Gens' dismissal.[13]

¶9 In 1984, Oklahoma adopted the Oklahoma Pleading Code (Pleading Code) and we became a notice pleading state.[14] All that is required under notice pleading is that the petition give fair notice of the plaintiff's claim and the grounds upon which it rests.[15] Section 2008 of the Pleading Code merely requires that the pleading shall contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Any requirement that a litigant correctly identify a theory of recovery or describe the remedy affordable for an asserted right's vindication is abolished [16] and the doctrine of mandatory election of remedies has become an anachronism.[17] Finally, for most claims, the pleader need not utilize terms of art or legal phraseology.[18]

### a. The petition adequately pleads and states a claim for bad faith breach of contract.

¶10 Casady argues that Gens' assertions that it breached a promise to allow her child to continue as a Casady student at a reduced tuition cannot withstand a statute of frauds [19] defense as an unwritten contract

---

*State ex rel. Dept. of Corrections*, 1996 OK 139, ¶7, 915 P.2d 359.

5. *Shero v. Grand Savings Bank*, 2007 OK 24, ¶5, 161 P.3d 298; *Hayes v. Eateries, Inc.*, 1995 OK 108, ¶2, 905 P.2d 778.

6. *State ex rel. Wright v. Oklahoma Corp. Comm'n*, 2007 OK 73, ¶52, 170 P.3d 1024; *Estate of Hicks ex rel. Summers v. Urban East, Inc.*, 2004 OK 36, ¶5, 92 P.3d 88.

7. *State ex rel. Wright v. Oklahoma Corp. Comm'n*, see note 6, supra; *Dyke v. Saint Francis Hosp., Inc.*, 1993 OK 114, fn. 6, 861 P.2d 295.

8. *May, M.D. v. Mid–Century Ins. Co.*, see note 4, supra.

9. *Lockhart v. Loosen*, see note 4, supra; *Indiana Nat'l Bank v. State Dept. of Human Services*, 1994 OK 98, ¶4, 880 P.2d 371

10. *Id.; Kentucky Central Life Ins. Co. v. LeDuc*, 814 F.Supp. 832, 835 (N.D.Cal.1992).

11. *Washington v. State ex rel. Dept. of Corrections*, see note 4, supra.

12. *Fanning v. Brown*, 2004 OK 7, ¶4, 85 P.3d 841; *Indiana Nat'l Bank v. State of Oklahoma Dept. of Human Services*, see note 9, supra.

13. *May, M.D. v. Mid–Century Ins. Co.*, see note 4, supra.

14. Title 12 O.S.2001 § 2001 *et seq.*

15. *Finnell v. Seismic*, 2003 OK 35, ¶12, 67 P.3d 339; *Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, ¶3, 913 P.2d 1318.

16. *Finnell v. Seismic*, see note 15, supra; *Silver v. Slusher*, 1988 OK 53, ¶5, 770 P.2d 878, *cert. denied*, 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989).

17. *Finnell v. Seismic*, see note 15, supra.

18. *Finnell v. Seismic*, see note 15, supra; *Niemeyer v. United States Fidelity & Guaranty Co.*, 1990 OK 32, ¶5, 789 P.2d 1318.

19. Title 15 O.S. Supp.2003 § 136 providing in pertinent part:
 "The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, by an agent of the party or by a single-party broker of the party pursuant to Sections 858–351 through 858–363 of Title 59 of the Oklahoma Statutes:
 1. An agreement that, by its terms, is not to be performed within a year from the making thereof . . ."

intended to extend over a period of years. Nevertheless, an oral agreement may be a continuing contract and extend for more than one year and not be within the statute of frauds, if the contract may be terminated at any time by either party.[20] Certainly, no one has asserted that Gens was required to leave her child in Casady's system if the mother decided that another educational environment would better suit her son's needs. In defense of the breach of contract claim, Casady points to a provision of the written annual contract that specifically provides its rights of termination.[21]

 ¶ 11 Even if Gens could not enforce the oral promise that her son could continue in the Casady system indefinitely, Gens alleges the existence of a written contract for the 2003–2004 school year [22] and the record contains a contract for the year in which the child was dismissed. Although the contract contains a provision allowing the school to terminate enrollment,[23] Gens asserts that the termination decision was done in violation of Casady's own procedures. Finally, every contract in Oklahoma contains an implied duty of good faith and fair dealing.[24]

¶ 12 Most certainly, Gens has asserted the existence of a contract, the breach thereof, and facts from which it might be determined that the breach was in bad faith. She has met all that is required under notice pleading. It is of little consequence whether the bad faith breach might result in independent tort liability. The allegations of breach of contract are sufficient to survive a motion to dismiss for failure to state a claim upon which relief may be granted.

**b. The mother, as the child's next friend, may maintain a cause of action for invasion of privacy on the child's behalf.**

 ¶ 13 As the caption in the instant cause clearly indicates, the mother is proceeding in her own behalf **and as the "next friend" of her child.** Casady contends that the mother may not assert a constitutional claim of invasion of privacy,[25] because her constitutional rights are not at issue. The assertion is unconvincing.

 ¶ 14 Oklahoma's statutory law specifically provides that minors may protect their rights by suing through their next

**20.** *Sosbee v. Clark*, 1922 OK 201, ¶ 0, 207 P. 732.

**21.** Casady 2003–2004 Enrollment Contract and Tuition Payment Agreement appears as Exhibit A to Gens Second Amended Petition, filed on October 3, 2006, providing in pertinent part at ¶ 11:
"... Students enrolled are subject to the rules and regulations of the School, including, but not limited to, such rules as contained in the *Student and Parent Handbook*, as the same may be amended from time to time, which is incorporated by reference into this contract, which governs conduct by the student and the student's family or guardian. The School reserves the right, at any time, to terminate a student's enrollment for academic or disciplinary reasons or, when in the judgment of the School, it is in the student's or the School's best interest to do so. The School also reserves the right not to continue enrollment or not to re-enroll the student if the School reasonably concludes that the actions of a parent (or guardian) make a positive and constructive working relationship with the School impossible or seriously interfere with the School's accomplishment of its educational purposes. The decision of the School in these regards shall be final...."

**22.** Gens' Second Amended Petition, filed October 3, 2006, providing at ¶ 11:

"11. Each school year, including the school year 2003–2004, Casady affirmed and supplemented the previous promises made by the Headmasters to Linda and Stephen, by executing the Enrollment Contract and Tuition Agreement in similar forms. The form executed by Casady for 2003–2004 is attached at Exhibit 'A'. To the extent that Casady had discretion as to the termination of Thomas, that discretion was abused in that the action of Casady to terminate Thomas was not right and equitable under the circumstances."

**23.** Casady 2003–2004 Enrollment Contract and Tuition Payment Agreement, see note 21, supra.

**24.** *Wathor v. Mutual Assurance Adm'rs, Inc.*, 2004 OK 2, ¶ 5, 87 P.3d 559; *Doyle v. Kelly*, 1990 OK 119, 801 P.2d 717.

**25.** A claim for invasion of privacy protects against unreasonable interferences with an individual's solitude. *Guinn v. Church of Christ of Collinsville*, 1989 OK 8, fn. 44, 775 P.2d 766. Likewise, the claim may extend to the appropriation of another's name or likeness, unreasonable publicity given to the other's private life, or publicity that unreasonably places the other in false light before the public. *McCormack v. Oklahoma Publishing Co.*, 1980 OK 98, ¶ 3, 613 P.2d 737.

friend.[26] Furthermore, Oklahoma jurisprudence has long held that where a minor brings suit by a parent as next friend, the minor is in court for all purposes.[27]

 ¶ 15 By bringing the invasion of privacy claim as her son's "next friend," the mother steps into her son's shoes for all purposes. She is not, as Casady would have us believe, asserting a claim on her behalf for the violation of her son's constitutional right of privacy.[28]

**c. Although the mother may have inartfully pled the right to receive the child's psychological records, access may be obtained through court order. Furthermore, it is unclear whether Casady's assertion of the physician's/psychotherapist's privilege may withstand challenge.**

 ¶ 16 Casady School contends that the minor's psychological records, which the mother argues contain evidence of unauthorized testing and the results thereof, are confidential and that they may assert a physician's or psychotherapist's privilege to keep those records confidential under 43A O.S. Supp.2006 § 1–109(A)(1).[29] First, under the facts presented, it is unclear whether the tests were administered by a professional with the right to exercise the confidentiality privilege. Second, even if the privilege is extended to Casady, the mother may still maintain access to her son's psychological records through a valid order of a court of competent jurisdiction.[30]

 ¶ 17 Generally, all patients have a statutory right to obtain access to information contained in their medical records.[31] Gens was not required to assert the correct remedy for attaining access to her son's rec-

**26.** Title 12 O.S.2001 § 2017 providing in pertinent part:

"... C. INFANTS OR INCOMPETENT PERSONS ... If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem...."

**27.** *Crockett v. Root,* 1943 OK 263, ¶ 0, 146 P.2d 555.

**28.** Generally, this Court does not address a party's asserting vicariously the constitutional rights of others. *Barzellone v. Presley,* 2005 OK 86, fn. 32, 126 P.3d 588; *Forest Oil Corp. v. Corporation Comm'n,* 1990 OK 58, ¶ 31, 807 P.2d 774.

**29.** Title 43 O.S. Supp.2006 § 1–109(A)(1) providing in pertinent part:

"All mental health and drug or alcohol abuse treatment information, whether or not recorded, and all communications between a physician or psychotherapist and a consumer are both privileged and confidential...."

It is interesting to note that if Casady receives any federal funds for its program, it may have a duty under the United States Code to provide the right of inspection to Gens. See, 20 U.S.C.A.2002 § 1232g(a)(B) providing:

"(B) No funds under any applicable program shall be made available to any State education agency (whether or not that agency is an educational agency or institution under this section) that has a policy of denying, or effectively prevents, the parents of students the right to inspect and review the education records maintained by the State education agency on their children who are or have been in attend-

ance at any school of an educational agency or institution that is subject to the provisions of this section."

Additionally, if the child were to be placed in foster care, the Department of Human Services would be required to ensure that the foster parents were provided with his school records. See, 10 O.S.2001 § 7003–5.4(A)(8) providing in pertinent part:

"A. The court shall ensure that the following information accompanies any deprived child placed outside the child's home as soon as the information becomes available:

... 8. Education history to include present grade placement, last school attended, and special strengths and weaknesses. The Department of Human Services shall also assist the foster parents in getting the foster child's school records and gaining school admission ...."

**30.** Title 43A O.S. Supp.2006 § 1–109(D) providing in pertinent part:

"Except as otherwise permitted, mental health and alcohol or substance abuse treatment information may not be disclosed without valid patient authorization or a valid court order issued by a court of competent jurisdiction...."

**31.** Title 76 O.S. Supp.2005 § 19(A)(1) providing in pertinent part:

"Any person who is or has been a patient of a doctor, hospital, or other medical institution shall be entitled, upon request, to obtain access to the information contained in the patient's medical records ...."

ords.[32] A statutory remedy exists. The remedy, coupled with the uncertainty of whether Casady may maintain the physician's/psychotherapist's privilege, is sufficient to withstand the motion to dismiss for failure to state a claim upon which relief may be granted.

## CONCLUSION

¶ 18 We express no opinion as to whether Gens will ultimately prevail on any of the alleged theories of recovery. Nevertheless, under the facts presented, we cannot agree that Casady has demonstrated that, beyond any doubt, Gens may not prove facts which would result in recovery.[33] Rather, Gens has made arguments sufficient to avoid a summary dismissal for failure to state a claim for which relief may be granted on the theories of breach of contract, invasion of privacy, and withholding of psychological records.

**CERTIORARI GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT REVERSED; CAUSE REMANDED.**

EDMONDSON, V.C.J., OPALA, KAUGER, WATT, COLBERT, REIF, JJ., concur.

WINCHESTER, C.J., and HARGRAVE and TAYLOR, JJ., dissent.

---

**32.** See ¶ 9 explaining the nature of notice pleading and accompanying footnotes.

**33.** *Fanning v. Brown,* see note 12, supra; *Frazier v. Bryan Memorial Hosp.,* 1989 OK 73, ¶ 13, 775 P.2d 281.