FILED
United States Court of Appeals
Tenth Circuit

February 28, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CAROLYN SUE LAWSON, as the
personal representative for the estate of
JOHN FITZGERALD PERRY, deceased,

     Plaintiff - Appellant,

v.

OKMULGEE COUNTY CRIMINAL
JUSTICE AUTHORITY, a public trust;
NURSE T. WEST, LPN; JOHN F.
MUMEY, M.D.; NURSE FREEMAN,
LPN; STATE OF OKLAHOMA ex. rel.,
OKLAHOMA DEPARTMENT OF
CORRECTIONS; LINDSAY
MUNICIPAL HOSPITAL; and ROSS
LANE FISHER, M.D.,

     Defendants - Appellees.

No. 16-7070
(D.C. No. 6:15-CV-00300-FHS)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **SEYMOUR**, and **McHUGH**, Circuit Judges.
_____

Less than two months after being diagnosed with stage four terminal cancer, John

Fitzgerald Perry, while in the custody of the Oklahoma Department of Corrections,

succumbed to cancer on August 8, 2013. Carolyn Sue Lawson, as the personal

_____

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

representative of Mr. Perry's estate, commenced this lawsuit on August 10, 2015, asserting claims under 42 U.S.C. §1983 and Article II, § 9 of the Oklahoma Constitution against seven individuals and entities for subjecting Mr. Perry to cruel and unusual punishment through deliberate indifference to his serious medical needs. Defendants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which the district court granted. The estate appeals and we affirm.[1]

## I

The estate appeals the dismissal of six defendants, all various individuals and entities charged with caring for Mr. Perry while he was incarcerated at one of three locations: the Okmulgee County Jail, the Lexington Assessment and Reception Center ("LARC"), and the James Hamilton Correctional Facility ("Hamilton").

Mr. Perry was incarcerated at the Okmulgee County Jail from December 9, 2010 to September 28, 2011. Okmulgee County Criminal Justice Authority ("OCCJA"), a public trust created under Oklahoma law, operates the Okmulgee County Jail. During Mr. Perry's intake procedures on December 9, 2010, Nurse West noted a "nodule" on Mr. Perry's neck. Aplt. App. at 35. In a subsequent examination on December 28, 2010, Nurse Freeman noted that Mr. Perry had a "lump" on his neck and regularly suffered headaches. *Id.* Neither Nurse West nor Nurse Freeman referred Mr. Perry for diagnostics or other medical treatment.

---

[1] "[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citing *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)).

On January 9, 2011, Dr. John Mumey, M.D. formulated a plan to drain the "lump" on Mr. Perry's neck. *Id.* It is unclear whether Dr. Mumey ever drained the lump but his medical notes from January and February 2011 reveal that Mr. Perry was also suffering from recurring headaches and a sore throat. On April 5, 2011, Nurse Freeman noted that one side of Mr. Perry's throat was red and that growths like warts had appeared on the back of his tongue. For treatment she prescribed Chlor-trimeton, an allergy and cold medicine.

Dr. Mumey examined Mr. Perry once more on May 11, 2011. His notes indicate that Mr. Perry complained of pain in his "neck mass." *Id.* at 36. Dr. Mumey did not refer Mr. Perry out for a biopsy or other diagnostic procedure but opted instead to merely continue Ibuprofen to treat the pain. During this period, Mr. Perry also spit up blood and exhibited facial swelling. After leaving the Okmulgee County Jail on September 28, 2011, Mr. Perry never interacted again with defendants OCCJA, Nurse West, Nurse Freeman, or Dr. Mumey.

From September 28, 2011 until his death in August 2013, Mr. Perry was in the custody of the State of Oklahoma *ex rel.* Oklahoma Department of Corrections ("ODOC") at either LARC or Hamilton. At some point during the four weeks Mr. Perry spent at LARC in the latter part of September and in October 2011, a chest X-Ray administered by LARC medical staff revealed a "spot" on Mr. Perry's lungs. Even though defendant Dr. Ross Lane Fisher, M.D. was allegedly aware of the spot, he "did nothing to provide proper pathology or diagnosis." *Id.* at 36-37. In addition, a mug shot taken upon Mr. Perry's arrival at LARC clearly showed the golf ball-sized lump on his

neck. Dr. Fisher nevertheless did nothing to determine whether the lump was malignant, even as Mr. Perry's health continued to deteriorate.

Defendant ODOC transferred Mr. Perry to Hamilton in October 2011, where he remained until June 2013. During this period, he continued to suffer recurring headaches and pain in his neck mass, and to spit up blood. Although he submitted medical sick call slips, he was "denied meaningful medical treatment." *Id*. at 37. In June 2012, defendant ODOC sent Mr. Perry to Lindsay Municipal Hospital to have the large mass removed from his neck.[2] The estate alleges that the mass was never biopsied. Over the next year, Mr. Perry continued to "have serious medical problems," yet Hamilton medical staff remained "negligent and deliberately indifferent to Mr. Perry's serious medical needs." *Id*. at 38.

In May or June 2013, Mr. Perry's condition worsened and Hamilton medical staff finally referred Mr. Perry to a nearby hospital for an X-Ray. Mr. Perry never learned the results. In June 2013, Hamilton medical staff again sent Mr. Perry to Lindsay Municipal Hospital, which immediately referred him to Oklahoma University Medical Center where Mr. Perry learned that he had stage four terminal cancer. He received radiation treatment at OU Medical Center for approximately thirty days before he was returned to LARC. Despite his terminal diagnosis, LARC medical staff, "including Dr. Fisher," did not place him in LARC's medical unit, which caused Mr. Perry to become dehydrated and to black out. *Id*. at 39. On August 8, 2013, Mr. Perry succumbed to the cancer.

---

[2] Lindsay Municipal Hospital was originally an appellant, but in its opening brief, the estate abandoned its appeal of the district court's Order granting Lindsay Municipal Hospital's Motion to Dismiss.

On August 10, 2015, Ms. Lawson, as personal representative of Mr. Perry's estate, commenced this lawsuit. The estate asserts two claims against defendants. It alleges pursuant to 42 U.S.C. §1983 that defendants violated Mr. Perry's Eighth and Fourteenth Amendment rights by failing to diagnose and treat his serious medical condition. It also alleges state claims pursuant to *Bosh v. Cherokee Building Authority*, 305 P.3d 994 (Okla. 2013), contending that defendants were deliberately indifferent to Mr. Perry's serious medical needs and thereby subjected him to cruel and unusual punishment in violation of Article II, §§7 and 9 of the Oklahoma Constitution.

Each defendant, except Dr. Mumey, moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motions to dismiss of defendants OCCJA, Nurse West, Nurse Freeman, and ODOC on the basis that the estate's claims were time barred or, alternatively, failed to rise to the level of deliberate indifference to serious medical needs. The district court dismissed *sua sponte* both claims against Dr. Mumey, holding that the claims were time barred. Finally, the court granted Dr. Fisher's motion to dismiss. Although Dr. Fisher asserted a statute of limitations defense to the *Bosh* claim, which the court dismissed as time-barred, he failed to raise that defense to the §1983 claim. Accordingly, the district court dismissed the §1983 claim against Dr. Fisher solely on the ground that the estate failed to state a claim upon which relief could be granted because it did not establish his deliberate indifference to Mr. Perry's serious medical needs. This appeal followed.

## II

On appeal, the estate contends the district court erred in dismissing as time barred its *Bosh* claims against all defendants and its §1983 claims against all defendants except Dr. Fisher. The court did so, the estate asserts, because it incorrectly determined the statute of limitations for the *Bosh* claims and the accrual date for all claims. Accordingly, we will first establish the applicable statutes of limitations and then determine when, as a matter of law, the estate's causes of action accrued. Because Dr. Fisher did not raise a statute of limitations defense for the §1983 claim against him, we consider that claim separately.

### A.     Timeliness of the Estate's Claims

Pursuant to Federal Rule of Civil Procedure 8(c)(1), the lapse of "the statute of limitations is an affirmative defense." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). A defendant may raise a pre-answer statute of limitations defense in a Rule 12(b)(6) motion to dismiss, however, "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Id.* Where, as here, "the facts and dates are not disputed, we may as a matter of law determine when a cause of action has accrued." *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (citing *Edwards v. Int'l Union, United Plant Guard Workers*, 49 F.3d 1047, 1050 (10th Cir. 1995)).

We review de novo the district court's determination that the estate's claims are time barred. *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1194 (10th Cir. 1998). Moreover, because the standard of review is de novo, we "can affirm a lower court's ruling on any

6

grounds adequately supported by the record, even grounds not relied upon by the district court." *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 879 (10th Cir. 2017) (quoting *Elwell v. Byers*, 699 F.3d 1208, 1213 (10th Cir. 2012)).

### 1. Applicable Statutes of Limitations

Because "[t]here is no applicable federal statute of limitations relating to civil rights actions brought under section[] 1983," we borrow the limitations period for such claims from the "state where the cause of action arose." *Crosswhite v. Brown*, 424 F.2d 495, 496 (10th Cir. 1970) (per curiam). We have determined, as a matter of law, that every §1983 claim is "in essence an action for injury to personal rights," *Garcia v. Wilson,* 731 F.2d 640, 651 (10th Cir. 1984), and thus apply the most analogous Oklahoma statute, which provides a two-year limitations period. *See* Okla. Stat. tit. 12, §95(A)(3) ("Civil actions . . . can only be brought within [two years] after the cause of action shall have accrued, and not afterwards . . . for injury to the rights of another."). *See also Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005) ("Oklahoma's two-year statute of limitations applies.") (citing *Abbitt v. Franklin*, 731 F.2d 661, 663 (10th Cir. 1984) (en banc)). Thus, the district court correctly determined that the estate's §1983 claims are subject to a two-year limitations period.

The estate's *Bosh* claims are subject to a one-year statute of limitations. Okla. Stat. tit. 12, §95(A)(11). Section 95(A)(11) provides that "[a]ll actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of . . . the State of Oklahoma . . . shall be commenced within one (1) year after the cause of action shall have accrued." Attempting to lengthen the limitations period,

the estate contends that the one-year period "applies *only* to claims filed by inmates or former inmates." Aplt. Br. at 20. It argues that although the suit concerns occurrences while Mr. Perry was an inmate, he is not the person filing suit and the estate's *Bosh* claims should instead be subject to the two-year limitations period provided in Oklahoma's wrongful death statute. Okla. Stat. tit. 12, §1053(A).

The estate's argument is unpersuasive for a reason that it identifies itself—Ms. Lawson brought the claims "in a purely representative capacity for the estate of . . . Mr. Perry." Aplt. Br. at 21. Ms. Lawson brought vicarious claims, not a personal claim under Oklahoma's wrongful death statute. In the few instances in which Oklahoma law permits constitutional rights to be brought for another person, the vicarious plaintiff "steps into [the injured party's] shoes for all purposes." *Gens v. Casady Sch.*, 177 P.3d 565, 571 (Okla. 2008). As the personal representative of Mr. Perry's estate bringing constitutional claims on his behalf, Ms. Lawson cannot escape the limitations period that would otherwise apply to Mr. Perry's claims if he were able to bring them himself. *Kimberly v. DeWitt*, 606 P.2d 612, 616 (Okla. Civ. App. 1980) (survival actions are subject to the statute of limitations which would have been binding on decedent had he lived). The district court properly determined that the estate's *Bosh* claims are subject to a one-year limitations period.

## 2. Date of Accrual

Even though the limitations period for §1983 claims are borrowed from state law, the question of when a cause of action accrues under §1983 remains one of federal law. *See Smith*, 149 F.3d at 1154 ("[F]ederal law . . . dictates when the statute of limitations

8

begins to run for purposes of §1983.").  It is well settled that a "civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993).  The injury in a §1983 claim is the violation of a constitutional right, and such claims accrue "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Smith*, 149 F.3d at 1154 (citation omitted).  Oklahoma courts have not directly addressed when a *Bosh* claim accrues, but under Oklahoma law generally "[a] cause of action accrues when the injury occurs." *Calvert v. Swinford*, 382 P.3d 1028, 1033 (Okla. 2016).  Because the injury alleged in a *Bosh* claim is the violation of state constitutional rights, just as the alleged injury in a §1983 claim is the violation of federal constitutional rights, we apply the same accrual analysis to both claims.

To determine the accrual date of the estate's claims, our precedent requires we first identify the alleged constitutional violations and then locate when they occurred.  *See Smith*, 149 F.3d at 1155.  The claims allege that defendants were deliberately indifferent to Mr. Perry's serious medical needs and therefore subjected him to cruel and unusual punishment in violation of the U.S. and Oklahoma Constitutions.  The crux of the alleged constitutional violations—failure to diagnose and treat Mr. Perry's serious medical conditions—is that defendants provided constitutionally inadequate treatment and diagnostics.  Although the nature of the alleged violations is such that there is no single accrual date, we need not decide the exact dates because we conclude the estate's claims accrued *at the latest* when Mr. Perry learned he had cancer in June 2013.  Perhaps Mr. Perry should have known that his constitutional rights were violated before the

9

diagnosis, particularly when the painful excrescence on his neck grew from a mere "nodule" in December 2010 to a "golf ball-sized lump" by September 2011. At the very latest, however, Mr. Perry should have known that he had a possible claim against defendants for deliberate indifference in June 2013, when he was diagnosed with stage four terminal cancer. Mr. Perry's diagnosis brought into focus the profound constitutional inadequacy of defendants' antecedent treatment and diagnoses, or lack thereof, and we therefore hold that the estate's claims accrued by June 2013.

The estate incorrectly relies on Oklahoma's wrongful death statute, Okla. Stat. tit. 12, §1053(A), to claim the date of death as the time of accrual. *Kimberly,* 606 P.2d at 616 ("The limitation provided in the wrongful death statute is two years, and it begins to run on the date of death."). But as we have noted, Ms. Lawson brought claims in a purely representative capacity for alleged violations of Mr. Perry's federal and state constitutional rights. Such claims accrue when the injured party "knows or has reason to know of the injury which is the basis of the action," *Baker*, 991 F.2d at 632, and it was Mr. Perry's diagnosis, not his death, which revealed that defendants had done virtually nothing to determine the true pathology of his symptoms or to treat his obviously serious medical condition. By arguing that Ms. Lawson "had no reason to know that Mr. Perry had suffered any constitutional injury until the time of his death," Aplt. Br. at 17, the estate is ignoring that Ms. Lawson is suing in a purely representative capacity for Mr. Perry's estate and has "step[ped] into [his] shoes for all purposes." *Gens*, 177 P.3d at 571. Accordingly, the relevant inquiry is when Mr. Perry—not Ms. Lawson—knew or had reason to know of his constitutional injuries. As determined above, Mr. Perry knew

10

or had reason to know of the potential claims against defendants at the latest upon his diagnosis in June 2013.

Because the estate did not file this action until twenty-six months later in August 2015, the estate's claims are time-barred under §1983's two-year limitations period and the *Bosh* claims' one-year limitations period. The district court properly dismissed the estate's *Bosh* claims against all defendants and the §1983 claims against defendants OCCJA, Nurse West, Nurse Freeman, Dr. Mumey, and ODOC.

## B.     The Estate's §1983 Claim Against Dr. Fisher

Although the estate's §1983 claim against Dr. Fisher also accrued at the latest upon Mr. Perry's diagnosis, Dr. Fisher inexplicably did not raise a statute of limitations defense to the §1983 claim in his motion to dismiss. The district court granted Dr. Fisher's motion on the only issue he raised, failure to state a claim upon which relief could be granted. But our standard of review is de novo and we therefore "can affirm . . . on any grounds adequately supported by the record, even grounds not relied upon by the district court." *Safe Sts. All.,* 859 F.3d at 879 (quoting *Elwell,* 699 F.3d at 1213). Because the question whether the estate stated an Eighth Amendment claim is a close one with respect to Dr. Fisher, and because our statute of limitations and accrual analyses set forth above apply identically to Dr. Fisher, we affirm on that ground. Even assuming we were to reverse the district court's determination that the estate failed to state an Eighth Amendment claim against him, the district court would be required, upon remand and

11

responsive pleading, to dismiss on statute of limitations grounds because the estate's §1983 claim against Dr. Fisher is clearly time barred. [3]

AFFIRMED.

Entered for the Court

Stephanie K. Seymour
Circuit Judge

---

[3] Dr. Fisher's failure to raise a statute of limitations defense in his motion to dismiss does not preclude him from raising it in his answer. *See Van Tu v. Koster*, 364 F.3d 1196, 1200 (10th Cir. 2004) (stating that Fed. R. Civ. P. 8(c) "requires a party to include the defense of statute of limitations in his responsive pleading. Calley properly raised the defense in his answer. It is therefore irrelevant that he did not present it in his motion to dismiss.").