GUILBEAU v. DURANT H.M.A.
2023 OK 80
Case Number: 119901
Decided: 06/20/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 80, __ P.3d __

 

 

CRYSTAL GUILBEAU, Plaintiff/Appellant,
v.
DURANT H.M.A., LLC, d/b/a MEDICAL CENTER OF SOUTHEASTERN OKLAHOMA, a/k/a ALLIANCEHEALTH DURANT, and
LAUREN ARMOR, Defendants/Appellees.

CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION III

¶0 After Appellant suffered a miscarriage, Hospital employees photographed the child's remains and presented the images to her as part of Hospital's bereavement program. Appellant sued Hospital and unnamed employees on theories of negligence and intentional infliction of emotional distress (IIED). The trial court dismissed the negligence claims. Appellant later dismissed the remaining IIED claim without prejudice, and without appealing the trial court's dismissal of her negligence claims. In a subsequent lawsuit, Appellant re-alleged all of her original claims, added a new claim of invasion of privacy, and added Armor, a Hospital employee, as a defendant. The trial court granted Defendants' partial motions to dismiss. The Court of Civil Appeals affirmed, finding that (1) Appellant was precluded from re-asserting her negligence claims in the second lawsuit, because she never sought review of the trial court's dismissal of those claims in the first lawsuit; (2) Appellant's addition of an invasion-of-privacy claim in the second lawsuit was not time-barred; however, (3) the invasion-of-privacy claim was properly dismissed because Appellant had no personal cause of action on these facts; and finally, (4) the addition of Armor as a defendant in the second lawsuit was barred by the statute of limitations.

COURT OF CIVIL APPEALS' OPINION VACATED;
TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART;
CASE REMANDED FOR FURTHER PROCEEDINGS 

Donald E. Smolen II, Tulsa, Oklahoma, for Plaintiff/Appellant.

John David Lackey, Tulsa, Oklahoma, for Defendants/Appellees.

KUEHN, J.

¶1 In this case we are asked to determine matters of civil procedure, as well as the contours of the substantive right to privacy under Oklahoma law. We find the Court of Civil Appeals correctly decided the procedural claims, but erred in concluding that, as a matter of law, no claim for invasion of privacy could lie on the available facts.

FACTS AND PROCEDURAL HISTORY

¶2 In the summer of 2016, Plaintiff/Appellant Crystal Guilbeau, several months pregnant, presented to Defendant Durant HMA (Hospital) complaining of abdominal pain. She ultimately experienced a miscarriage there. A few days after her release, Guilbeau was asked to return to Hospital, where she was presented with photographs of her deceased child. Guilbeau did not view the photos until she returned home. Guilbeau claims the photographs show the child's body in various poses and with props (e.g. angel wings). The child's limbs and mouth had allegedly been manipulated, for the apparent purpose (in the words of the petition) of making the child "look alive and well." In September 2016, Guilbeau sued Hospital and unknown employees who participated in creating the photos. She claims -- and no one can deny -- that the miscarriage itself was a traumatic experience for her. She also claims the photos were shocking to her and only compounded her trauma. The parties dispute whether Guilbeau consented to the taking of these photos, described in the pleadings as the product of Hospital's "bereavement program."

¶3 Guilbeau's first lawsuit, against Hospital and two "Jane Doe" defendants, alleged claims of intentional infliction of emotional distress (IIED) and negligence.

¶4 In August 2019, Guilbeau filed a document entitled "Notice of Claims." Guilbeau was apparently confused about whether the trial court's dismissal of her negligence claim in 2016 applied only to her claim of simple negligence, or included her allegation of negligent hiring, training, and supervision. While she described these as "separate and distinct legal theories of liability," she made both allegations under a single heading of "Negligence" in her petition.i.e., it allowed her to seek appellate review of its dismissals of the negligence claims before final resolution of the rest of the case. See 12 O.S. § 95212 O.S. § 683

¶5 In December 2020, Guilbeau filed her second lawsuit.

¶6 Guilbeau then dismissed her second lawsuit without prejudice, and timely appealed the trial court's adverse rulings. We assigned the appeal to the Court of Civil Appeals (COCA). The COCA agreed that Guilbeau's negligence claims were barred by the doctrine of claim preclusion, and that the addition of Armor as a defendant was barred by the statute of limitations. Although the COCA found Guilbeau's new invasion-of-privacy claim was not time-barred, it nevertheless affirmed its dismissal, concluding that Guilbeau had no actionable claim. We granted certiorari.

STANDARD OF REVIEW

¶7 A trial court may dismiss a civil action if it fails to state a claim on which relief can be granted -- i.e., when it appears beyond doubt that the plaintiff cannot prove any set of facts which would entitle her to relief under the law. 12 O.S. § 2012Gens v. Casady School, 2008 OK 5177 P.3d 565Id. We review them de novo, with no deference to the trial court's interpretation of the law, since the function of a motion to dismiss is to test the law supporting the claims, not to weigh facts. See id. "Dismissal is appropriate only for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable theory." Id. We also employ de novo review to a trial court's interpretation of doctrines developed by case law, such as issue preclusion and collateral estoppel. Wilson v. City of Tulsa, 2004 OK CIV APP 4491 P.3d 673Cities Serv. Co. v. Gulf Oil Corp., 1999 OK 14980 P.2d 116de novo. State ex rel. Oklahoma Department of Public Safety v. Gurich, 2010 OK 56238 P.3d 1Delbrel v. Doenges Bros. Ford, Inc., 1996 OK 36913 P.2d 1318

ANALYSIS

¶8 Guilbeau's petition for certiorari raises three challenges to the COCA's decision.

A. The negligence claims are barred by the claim-preclusion doctrine.

¶9 We first consider whether Guilbeau was barred from re-asserting her negligence claims in the second lawsuit, after she failed to appeal the trial court's dismissal of those claims in the first lawsuit. Guilbeau's first lawsuit alleged inter alia that Hospital was negligent in its handling of her deceased child's remains, and how it hired, trained, and supervised its employees. The trial court dismissed the negligence claim in November 2016. After extensive discovery, Guilbeau indicated in a pleading that she understood the court's order as only dismissing her general negligence theory, not her negligent-hiring theory. In September 2019, the trial court clarified that its dismissal applied to all negligence theories in Guilbeau's petition. At Guilbeau's request, the trial court agreed to certify that dismissal for interlocutory appellate review. But instead of seeking that review, Guilbeau chose to dismiss what remained of her lawsuit (the single IIED claim) with the option to refile later. When Guilbeau filed her second lawsuit, she included the negligence theories which the trial court had dismissed during the first lawsuit. Defendants moved for dismissal of these claims, because they had been rejected by the trial court in the first lawsuit, and Guilbeau did not seek appellate review of that ruling.

¶10 The doctrine of claim preclusion is an important restriction on a party's ability to re-litigate claims that have previously been rejected or abandoned. It aims for judicial economy, efficiency, and fairness. It seeks to deter litigants from advancing the same arguments over and over in hopes that a better-honed presentation, or a different judge, will yield a different result. Claim preclusion bars relitigation by parties (or their privies) of issues which either were, or could have been, litigated in a prior action which resulted in a prior judgment on the merits. State ex rel. Tal v. City of Oklahoma City, 2002 OK 9761 P.3d 234

¶11 Lawsuits can be complicated things. They often involve several claims, numerous parties, or both, and there are several points at which claims or parties may be dispatched from the lawsuit before a final judgment brings the entire case to a conclusion. What kinds of rulings may be appealed, and when, is a matter of constant concern to lawyers. Generally speaking, when a trial court dismisses some but not all claims or parties before trial, such rulings are not immediately appealable. 12 O.S. § 994Tinker Inv. & Mortg. Corp. v. City of Midwest City, 1994 OK 41873 P.2d 1029

¶12 On the other hand, Oklahoma law allows a plaintiff, without the court's permission, to dismiss her lawsuit "without prejudice," i.e. with the option to refile the lawsuit in the future, so long as she acts "before the final submission of the case to the jury, or to the court, where the trial is by the court." 12 O.S. § 683Tiffany v. Tiffany, 1948 OK 52199 P.2d 606

¶13 Among the strategic reasons for dismissing one's lawsuit without prejudice is the ability to seek appellate review of adverse rulings that would not otherwise be immediately appealable. It is now common practice for plaintiffs, aggrieved by an interlocutory ruling, to use the dismissal-without-prejudice option to force appellate review of that ruling without having to wait until the conclusion of the entire case at the trial level. See e.g. Vance v. Federal Nat'l Mortg. Ass'n, 1999 OK 73988 P.2d 1275

¶14 Guilbeau does not contest that this tactic was available to her when she dismissed her first lawsuit (to seek review of the trial court's rejection of her negligence claims). Indeed, she used that very same procedure here, to force appellate review of the trial court's adverse rulings in the second lawsuit. The issue is whether, with regard to the negligence claims, she was too late -- whether her failure to seek review of those rulings upon dismissal of the first lawsuit foreclosed her ability to re-allege those claims at a later time. It did.

¶15 "A submission is final, within the rule prohibiting a dismissal or nonsuit after final submission of the cause, where nothing remains to be done to render it complete." Tiffany, 1948 OK 5212 O.S. § 683Brandt v. Joseph F. Gordon Architect, Inc., 1999 OK 67998 P.2d 587Vance, 1999 OK 73Bivins v. State ex rel. Oklahoma Memorial Hosp., 1996 OK 5917 P.2d 456

¶16 In Brandt, the plaintiffs filed a multi-claim, multi-defendant tort action. The trial court granted partial summary judgment in favor of one of the defendants, Gordon. The plaintiffs dismissed their suit without prejudice after the court made its summary-judgment ruling from the bench, but before the court formalized the ruling with a written order. Brandt, 1999 OK 67Id. at ¶ 7, 998 P.2d at 589. The central question was whether the trial court had authority to formalize its ruling after an appeal had been initiated. Id. The plaintiffs argued that their dismissal "mooted any pending matters," including the bench ruling that let Gordon out of the case. Id. ¶ 8, 998 P.2d at 589. The plaintiffs' position was that their unilateral dismissal without prejudice 'wiped the slate clean' of any adverse rulings that had not yet been reduced to writing. We disagreed, noting this tactic is barred by 12 O.S. § 683except for any claims which had been finally submitted to the trial court. Citing Tiffany, we explained that "[f]inal submission of the case marks the end of plaintiff's dismissal by right...." Brandt, 1999 OK 67

With regard to Plaintiffs' cause of action against Gordon, Plaintiffs were no longer at liberty to dismiss without leave of the court, after the court rendered a bench ruling in Defendant's favor on the summary judgment motions. As a result, Plaintiffs' dismissal was not effective with regard to their claims against Gordon.

Id. at ¶ 10, 998 P.2d at 589-590. Regardless of whether the trial court in Brandt had memorialized its ruling, it had extinguished one of the plaintiffs' claims. The plaintiffs could not nullify that ruling by racing to the courthouse and dismissing their entire case before the ruling was reduced to writing. The plaintiffs' unilateral dismissal of their case, without prejudice to refiling, locked in the adverse ruling and made it ripe for appellate review.

¶17 The same is true here. In the first lawsuit, the trial court extinguished Guilbeau's negligence claims on a motion to dismiss. When she dismissed what remained of that lawsuit, without the permission of the court, she was obligated to appeal the court's rejection of her negligence claims at that time if she wished to preserve them. Section 683 of the Civil Procedure Code barred Guilbeau from unilaterally dismissing the case and refiling claims which had been finally submitted to the court before the dismissal. Guilbeau's second lawsuit sought a second bite at the apple on the negligence claims. This is the sort of conduct that the claim preclusion doctrine seeks to prevent. A plaintiff cannot use unilateral dismissal without prejudice to launder adverse rulings out of her case and hope to obtain a different result from the trial court the next time around.

¶18 We conclude, as the COCA did, that Guilbeau's attempt to revive her negligence claims in the second lawsuit was barred under the doctrine of claim preclusion. Because the negligence claims are barred, we need not address Guilbeau's second point on certiorari (the merits of those claims).

B. A claim for invasion of privacy could lie on the facts in this case.

¶19 The remaining issue on certiorari centers on the tort of "invasion of privacy" in Oklahoma law. Guilbeau's second lawsuit added a new claim of invasion of privacy. She alleged: "By forcing the body of Plaintiff's deceased child into disrespectful and disturbing positions, posing him with props, and taking numerous photos of Plaintiff's child, Defendants intentionally intruded upon Plaintiff's privacy and the privacy of Plaintiff's deceased child." There seems to be no dispute that as part of the Hospital's "bereavement program," actions beyond simple disposal were taken with the remains of Guilbeau's miscarriage, and that photographs were prepared for her. Guilbeau claims she never consented to this project, that the photographs would have been highly offensive to any reasonable person, and that she personally suffered emotional trauma on seeing them.

¶20 In moving to dismiss this claim, Hospital argued that Guilbeau had no cause of action because the photographs were not taken in a place where she had a reasonable expectation of privacy, and because the photographs were not of Guilbeau's own body. Hospital also asserted that because this claim was raised for the first time in the second lawsuit, it was time-barred. The trial court granted Hospital's motion to dismiss, but did not elaborate on the basis for its ruling.

¶21 On appeal, the COCA found that the invasion-of-privacy claim was not time-barred. That ruling is not challenged by Hospital on certiorari. However, the COCA concluded that the claim still failed. In assessing the merits of the claim, the COCA concluded that any right to privacy in this case belonged only to Guilbeau's child, quoting with approval Hospital's assertion that "[N]othing that [Hospital] did to someone else while somewhere else can legally constitute invasion of privacy to Plaintiff" (emphasis by Hospital). In the COCA's estimation, Guilbeau's only route to relief would be through a "relational" right to privacy, but the COCA concluded that no such right exists under our law. We disagree with the COCA's analysis.

¶22 The tort of "invasion of privacy" covers at least four different concepts. See generally McCormack v. Oklahoma Pub. Co., 1980 OK 98613 P.2d 737

One who intentionally intrudes, physically or otherwise, upon the solicitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977). We have recognized the "intrusion upon seclusion" theory as part of our law in several cases. Munley v. ISC Financial House, Inc., 1978 OK 123584 P.2d 1336Chandler v. Denton, 1987 OK 38741 P.2d 855Hadnot v. Shaw, 1992 OK 21826 P.2d 978Gilmore v. Enogex, Inc., 1994 OK 76878 P.2d 360Gilmore, id. at ¶ 16, 878 P.2d at 366.

¶23 Hospital's framing of the issue was flawed in two ways. First, the fact that the conduct took place in a hospital setting does not bar Guilbeau from claiming an unlawful intrusion into her personal affairs. While the phrase "intrusion upon seclusion" may conjure images of the Peeping Tom -- someone spying into another's home -- the concept is clearly broader than that. It extends to the acquisition of any information to which the general public is not entitled:

It may be by some other form of investigation or examination into [a person's] private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. . . .

Restatement (Second) of Torts § 652B, comment b (quoted with approval in Hadnot, 1992 OK 21See e.g. Berthiaume's Estate v. Pratt, 365 A.2d 792 (Me. 1976) (physician's unauthorized taking of photographs of hospital patient who was near death invaded patient's legally protected right to privacy). In any event, the COCA did not base its decision on this part of Hospital's argument, and we need not consider it further.

¶24 Second, Hospital argued that Guilbeau could not state a claim for injury based on conduct involving the remains of someone else. This was the focus of the COCA's analysis, as it discussed the so-called relational right to privacy, and declined to find such a right in Oklahoma law. We believe that analysis is off the mark.

¶25 The idea that a family member may have a cause of action for emotional distress over the handling of a loved one's remains is not new. See Larson v. Chase, 50 N.W. 238 (Minn. 1891) (wife had cause of action for mental distress caused by unlawful mutilation and dissection of her deceased husband's body). In McPosey v. Sisters of the Sorrowful Mother, 1936 OK 34657 P.2d 617see now 21 O.S. § 1158

What we have said already would be sufficient to cause us to remand the matter to the trial court if it were not for the fact that from a reading of the records and briefs of the parties we are convinced that the principal point argued and decided was the attempt to recover damages for mental anguish, pain, and grief because of the mutilation of the corpse of the wife.

McPosey, 1936 OK 346Id. at ¶ 13, 57 P.2d at 619. While the analysis in McPosey was not framed in terms of "invasion of privacy," we believe the case offers guidance here. McPosey stands for the basic proposition that one may have a cause of action in tort for the improper handling of human remains.

¶26 In rejecting Guilbeau's invasion-of-privacy claim, the COCA focused on the child's "right not to be photographed," even though the child did not survive birth. In Bazemore v. Savannah Hospital, 155 S.E. 194 (Ga. 1930), the plaintiffs' severely malformed child died shortly after birth. The hospital permitted someone to photograph the child's body. The plaintiffs' invasion-of-privacy claim against the hospital was dismissed on a general demurrer. The Georgia Supreme Court reversed, holding that a cause of action for invasion of privacy existed. In so holding, the court observed:

The suit is not based on injury to the deceased child. According to the allegations, the wrongs done by the defendants were committed after the death of the child. Therefore in this case there is no question of the survival of a right of action. The right, if it ever existed or now exists, began after the death of the child, and is a right of action on the part of the plaintiffs.

Id. at 196.

¶27 We find Bazemore persuasive on this point. In fact, the instant case is more straightforward than either McPosey or Bazemore. This case is not concerned simply with Guilbeau's right to control the handling of a loved one's body, but with the handling of the remains from her own miscarriage.her own right to privacy. That Hospital's conduct was occasioned by an unsuccessful attempt to bring another human life into the world only underscores that the primary focus should be on Guilbeau. No other person's right to privacy could have been invaded, as the child did not survive birth. The miscarriage was more personal to Guilbeau than to anyone else in the world.

¶28 What is more, the photographs that were taken did not simply record what might have been viewed, say, by a funeral attendee, or in a morgue, or even by hospital staff. According to Guilbeau's petition, the images did something more: they documented the handiwork of someone who intentionally manipulated the remains. The right to control how the remains were handled belonged to Guilbeau.

¶29 To summarize, on these facts we find it unnecessary to consider what might constitute a "relational" right to privacy and whether that right exists in Oklahoma. It was Guilbeau herself who experienced the miscarriage, and she was presented with photographs directly related to her experience and the handling of the remains. We express no opinion on whether Guilbeau can establish that the Hospital's bereavement project was either (1) done without her consent or (2) highly offensive to a reasonable person. We simply hold that she has stated a claim on which relief could be granted under existing Oklahoma law.

CONCLUSION

¶30 The Court of Civil Appeals was correct when it held that Guilbeau could not re-assert her negligence claims in her second lawsuit. However, the Court of Civil Appeals erred in finding that Guilbeau's invasion-of-privacy theory failed to state a claim on which relief could be granted. The remainder of the Court of Civil Appeals' opinion remains undisturbed.

COURT OF CIVIL APPEALS' OPINION VACATED;
TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART;
CASE REMANDED FOR FURTHER PROCEEDINGS 

CONCUR: KANE, C.J., ROWE, V.C.J., and KAUGER, EDMONDSON, COMBS,
GURICH and KUEHN, JJ.

DISSENT: WINCHESTER and DARBY, JJ.

FOOTNOTES

except for IIED, alleging that both negligence claims were barred, that the invasion-of-privacy claim was untimely, and that all three failed to state a claim as a matter of law. Armor's motion to dismiss echoed Hospital's, and added that she should be dismissed as a defendant altogether because the statute of limitations for naming her as a party had run. Guilbeau amended her petition a week later, setting out a "Negligent Training, Hiring, and Supervision" claim separately from the "Negligence" claim. After Guilbeau amended her petition, Defendants renewed their motions to dismiss.

certiorari, so we do not consider it. Oklahoma Supreme Court Rule 1.180(b), 12 O.S., App. 1; Robey v. Long Beach Mtg. Corp., 2005 OK 64124 P.3d 221certiorari.

Claim preclusion, or res judicata at common law, prevents a party in a second suit between the same parties, or their privies, from relitigating an adjudicated claim as well as issues of fact or law necessary to the previous final judgment on the merits, or relitigating those issues which could have been decided in the previous suit. . . . Issue preclusion, or collateral estoppel at common law, prevents relitigation of an issue in a second suit on a different claim. . . .

Farley v. City of Claremore, 2020 OK 30465 P.3d 1213

See also Hollingshead v. Elias, 2016 OK CIV APP 46376 P.3d 936Waits v. Viersen Oil & Gas Co., 2015 OK CIV APP 95361 P.3d 562Schoenhals v. PSR Investors, Inc., 2013 OK CIV APP 27299 P.3d 874Patel v. Tulsa Pain Consultants, Inc., PC, 2015 OK CIV APP 45348 P.3d 1117Raven Resources, L.L.C. v. Legacy Bank, 2009 OK CIV APP 101229 P.3d 1273

both the remains of a deceased child, as well as any part of her own body. See 21 O.S. § 115821 O.S. § 1157